ORIGINAL

## In the United States Court of Federal Claims

No. 16-149T
(Filed: July 26, 2016)

FILED

JUL 2 6 2016

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROGER C. JOHNSON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Tucker Act; 28 U.S.C. § 1491; Pro Se
Plaintiff; Motion to Dismiss; RCFC
12(b)(1); Tax Refund; Wrongful Levy; IFP
Application

Roger C. Johnson, Westerville, OH, pro se.

Jason Selmont, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court are plaintiff's application to proceed in forma pauperis ("IFP") and defendant's motion to dismiss plaintiff's complaint. For the reasons set forth below, both motions are granted.

## I. BACKGROUND

Plaintiff Roger C. Johnson seeks a refund of "illegally levied" monies from his "exempt pension fund." Compl. ¶ 2. According to plaintiff, as a federal "nontaxpayer," he has no obligation to comply with the Internal Revenue Service's ("IRS") "Letter, CP Notices and Notices of Levy," which he received by mail. Id. ¶¶ 5, 7. Plaintiff claims that the IRS's attempts to obtain those monies from him constitute violations of: (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (2012), id. ¶¶ 10, 11; (2) the Hobbs Act, 18 U.S.C. § 1951, id. ¶ 11; and (3) the Fourth Amendment to the United States Constitution, id. ¶¶ 9, 15. Plaintiff also alleges that defendant committed tortious acts. Id. ¶ 14. Plaintiff seeks: (1) "[a]ctual damages in excess of $61,381.19, trebled to in excess of $184,143.57"; (2) "[p]unitive damages of $1,000,000.00"; (3) an order "[e]njoin[ing] Defendant[s] from any civil or criminal proceedings based upon the herein described actions of Defendants"; (4) an order directing "Defendants to release any and all liens and levies against Plaintiffs"; and (5) "[s]uch other relief to the Plaintiff as is just." Id. ¶¶ 19-23.

USPS TRACKING #   9114 9999 4431 3548 1061 49
& CUSTOMER        For Tracking or inquiries go to USPS.com
RECEIPT           or call 1-800-222-1811.

Plaintiff's complaint and IFP application were filed on February 1, 2016. Three months later, on May 2, 2016, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). On May 16, 2016, plaintiff filed his response to plaintiff's motion to dismiss. Attached to his response was: (1) an IRS notice dated November 10, 2008, regarding an unclaimed refund of $61,381.19 for the tax period ending December 31, 2005; (2) a copy of a letter dated March 6, 2010, from plaintiff to the IRS seeking "over $61,381.19," pursuant to 26 C.F.R. § 301.7433-1; (3) a copy of the nature-of-suit codes for both general jurisdiction and vaccine cases in the United States Court of Federal Claims ("Court of Federal Claims"); (4) a copy of an IRS Form 1040A instruction sheet; and (5) a copy of an article about the Court of Federal Claims, which appears on the court's website. Defendant filed its reply on June 2, 2016. The court deems oral argument unnecessary.

## II. LEGAL STANDARDS

### A. The Tucker Act

The Court of Federal Claims is a court of limited jurisdiction. Jentoft v. United States, 450 F.3d 1342, 1349 (Fed. Cir. 2006) (citing United States v. King, 395 U.S. 1, 3 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. King, 395 U.S. at 4. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fid. Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." King, 395 U.S. at 4. Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." Cummings v. United States, 17 Cl. Ct. 475, 479 (1989) (citations omitted); see also United States v. Testan, 424 U.S. 392, 398 (1976) (stating that a "grant of a right of action must be made with specificity").

The Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." Adams v. United States, 20 Cl. Ct. 132, 135 (1990). Thus, with the exception of limited situations not relevant in this case, see, e.g., 28 U.S.C. § 1491(a)(2), (b)(2), the Court of Federal Claims lacks jurisdiction to award declaratory or injunctive relief. Bowen v. Massachusetts, 487 U.S. 879, 905 & n.40 (1988); accord Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide independent jurisdiction over . . . claims for equitable relief."). Moreover, subject to limited exceptions, federal courts are prohibited from awarding declaratory or injunctive relief by the Anti-Injunction Act. See 26 U.S.C. § 7421(a) (2012) ("[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."). Specifically, 26 U.S.C. § 7421(a) "provides that once a tax has been assessed, a taxpayer is powerless to prevent the [IRS] from collecting that tax." Stiles v. United States, 47 Fed. Cl. 1, 2 (2000). Nevertheless, Congress granted this court the authority to entertain tax refund suits, see 28 U.S.C. § 1346(a)(1), provided that the taxpayer plaintiff has made full payment. Flora v. United States, 357 U.S. 63, 75 (1958).

## B. Pro Se Plaintiffs

The Court of Federal Claims holds pleadings of a pro se plaintiff to less stringent standards than those of litigants represented by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although a pro se plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only."); Bernard v. United States, 59 Fed. Cl. 497, 499 (2004) (noting that pro se plaintiffs are not excused from satisfying jurisdictional requirements). As further explained in Demes v. United States, "[w]hile a court should be receptive to pro se plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed. Cl. 365, 369 (2002).

## C. Motions to Dismiss Pursuant to RCFC 12(b)(1)

When resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the court determines that the factual allegations set forth in the complaint are insufficient to resolve the jurisdictional dispute, then it may consider relevant evidence beyond the pleadings. See Fisher, 402 F.3d at 1181-83.

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and

dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties, or the court sua sponte, may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).  When a jurisdictional challenge is raised, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  The plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189. Ultimately, if the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. RCFC 12(h)(3); Matthews v. United States, 72 Fed. Cl. 274, 278 (2006).

## III. DISCUSSION

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tax Refund Claims

It is "undisputed" that the Court of Federal Claims possesses the authority to adjudicate tax refund claims. CNG Transmission Mgmt. VEBA v. United States, 84 Fed. Cl. 327, 328 (2008); accord Radioshack Corp. v. United States, 82 Fed. Cl. 155, 158 (2008); see also Artuso v. United States, 80 Fed. Cl. 336, 338 (2008) ("A tax refund claim, with very few exceptions, is the only type of tax dispute over which this court has jurisdiction.").  "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1)).  Section 1346 of title 28 of the United States Code provides, in relevant part:

> (a)  The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> > (1)  Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected . . . .

28 U.S.C. § 1346(a)(1).  In order for the court to assert jurisdiction over such a claim, however, a plaintiff must (1) satisfy the full payment rule, and (2) file a tax refund claim with the IRS. Artuso, 80 Fed. Cl. at 338.

### 1. Plaintiff Failed to Satisfy the Full Payment Rule

Under the full payment rule, a court's jurisdiction over tax refund claims is limited to those claims where the taxpayer has fully paid all taxes assessed for the tax year at issue prior to the initiation of the claim. Flora, 357 U.S. at 75.  The United States Court of Claims, the predecessor of the United States Court of Appeals for the Federal Circuit, "consistently applied the full payment rule with regard to the principal tax deficiency.  Where the principal tax

deficiency [w]as not . . . paid in full, such tax refund claims [were] dismissed . . . ." <u>Shore v. United States</u>, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (citing <u>Tonasket v. United States</u>, 218 Ct. Cl. 709, 711-712 (1978)); <u>accord</u> <u>Rocovich v. United States</u>, 933 F.2d 991, 993-94 (Fed. Cir. 1991). In other words, "payment of the assessed taxes in full is a prerequisite to bringing a refund claim." <u>Ledford v. United States</u>, 297 F.3d 1378, 1382 (Fed. Cir. 2002); <u>accord</u> <u>Artuso</u>, 80 Fed. Cl. at 338 ("A refund suit is exactly what the descriptive term implies. Under the 'full payment rule' a plaintiff must have fully paid the tax, penalties, and interest at issue.").

In this case, the very gravamen of plaintiff's complaint is that he is not a taxpayer and therefore has no obligation to pay the taxes that were assessed against him: "Plaintiff is, and always has been, a 'nontaxpayer.'" Compl. ¶ 7. Accordingly, plaintiff has not alleged, nor is there any evidence, that he paid the taxes that prompted the IRS to issue "multiple letters, levies and notices," since the 1980s.[1] <u>See</u> <u>id.</u> ¶ 12. Thus, plaintiff fails to demonstrate that he has fully paid all of his outstanding taxes.

## 2. Plaintiff Failed to File an Adequate Tax Refund Claim

In addition to satisfying the full payment rule, a plaintiff must also have filed a refund claim with the IRS for the amount of tax at issue, in compliance with 26 U.S.C. § 7422(a). <u>Artuso</u>, 80 Fed. Cl. at 338. Section 7422(a), which waives the federal government's sovereign immunity from tax refund suits, <u>Chi. Milwaukee Corp. v. United States</u>, 40 F.3d 373, 375 (Fed. Cir. 1994), provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). By requiring that a plaintiff first file a refund claim with the IRS, section 7422(a) creates a jurisdictional prerequisite to filing a refund suit in this court. <u>Chi. Milwaukee Corp.</u>, 40 F.3d at 374 (citing <u>Burlington N., Inc. v. United States</u>, 684 F.2d 866, 868 (Ct. Cl. 1982)); <u>see also</u> <u>Clintwood Elkhorn Mining Co.</u>, 553 U.S. at 7 (noting that Congress must have intended section 7422(a) to have an expansive reach given its inclusion of five "any's" in one sentence). In addition, the filing requirement "is designed both to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." <u>Computervision Corp. v. United States</u>, 445 F.3d 1355, 1363 (Fed. Cir. 2006) (citations and internal quotation marks omitted). Finally, although plaintiff need not file a formal refund claim in order to establish this court's jurisdiction, <u>Furst v. United States</u>, 230 Ct. Cl. 375, 380 (1982)

---

[1] In fact, neither party provides the court with any proof that plaintiff owes the IRS back taxes.

(citing United States v. Kales, 314 U.S. 186, 194 (1941)), "an informal claim must have a written component and 'should adequately apprise the Internal Revenue Service that a refund is sought and for certain years.'" Arch Eng'g Co. v. United States, 783 F.2d 190, 192 (Fed. Cir. 1986) (quoting Am. Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920 (1963)).

In this case, plaintiff's refund claim consists of a March 6, 2010 letter addressed to the IRS, captioned "Administrative Claim." Pl.'s Resp., Ex. B. In the letter, plaintiff claims that the IRS has illegally levied his property and therefore owes him money. Id. He further claims that "[t]he actual, direct and economic damages of this Administrative Claim are over $61,381.19." Id. Plaintiff's refund claim fails for the following reasons. First, plaintiff's claim is inadequate because he failed to identify the year or years for which a refund was sought. Second, the notice upon which plaintiff's refund request appears to be based, which was not attached to his refund claim, is addressed not to plaintiff as an individual but to plaintiff in his capacity as trustee of the Roger C. Johnson Trust. That plaintiff is not the same party identified in the IRS notice is borne out by both common sense and the fact that the taxpayer identification number on the IRS notice is not the same as the social security number plaintiff provided on his refund request. See Pl.'s Resp., Ex. A. Thus, in addition to failing to file an adequate refund claim with the IRS, it is unclear why plaintiff, in his individual capacity, is entitled to moneys belonging to the trust.[2]

## B. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Wrongful Levy Claim

Plaintiff claims that defendant has (1) "illegally levied Plaintiff's labor, to wit: Plaintiff's exempt pension fund," Compl. ¶ 2; (2) issued levy notices "outside the scope and authority of Defendants as they were issued outside of federal jurisdiction," id. ¶ 6; and (3) "erroneously taxed [plaintiff] on his sources [since] there can be no 'levy' on zero," id. ¶ 18. However, the court lacks subject matter jurisdiction to entertain a wrongful levy claim. Section 7426(a) of the Internal Revenue Code provides, in part:

> (1)     Wrongful levy. If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1). In other words, section 7426(a) states that the right to initiate a wrongful levy action against the government belongs to a third party, not "the person against whom is

---

[2] Even if plaintiff was entitled to seek a refund on behalf of the trust, the statute of limitations for filing such a request has long passed. Under 26 U.S.C. § 7422(a), plaintiff would have had to file a refund request within "3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later . . . ." Because the IRS letter was dated December 10, 2008, and pertained to tax year 2005, any tax refund claim would have to have been filed by no later than April 2009, three years from April 2006—the date the trust's income tax return would have been due.

assessed the tax out of which such levy arose." Id.; see also EC Term of Years Tr. v. United States, 550 U.S. 429, 433 (2007). Plaintiff, however, is not a third party. Therefore, he is not "within the class of plaintiffs entitled to recover under the statute . . . ." Greenlee County, Arizona v. United States, 487 F.3d 871, 876 (Fed. Cir. 2007).

### C. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Statutory and Constitutional Claims

Plaintiff claims that defendant violated RICO and the Hobbs Act by engaging in "a pattern of racketeering." Compl. ¶ 10. He further alleges:

11.   The herein "predicate acts" of Defendants under both RICO and Hobbs, do establish a pattern of racketeering, and extortion, by Defendants which constitute the "enterprise."

12.   A "Pattern of Racketeering activity" is defined to be a pattern that has both continuity and relationship. This pattern began in the [1980s] (and most likely before that) with Defendants' multiple letters, levies and notices [to] Plaintiff; it continues to this moment, and there is certainly a threat that such activity will continue into the future. The activities of racketeering continue, and there is no evidence available to Plaintiff that even suggests discontinuance of these activities. Continuation of this pattern by Defendants is also a continuation of damages to Plaintiff.

13.   Plaintiff states that this pattern contains a sequence of events, over years, that all have the same and common purpose, and that that purpose is one of egregiously deliberate, calculated and malicious[ ] fraud and extortion which is a "pattern of racketeering activity[.]"

14.   These patterns of racketeering activity, fraud, conspiracy to commit fraud and extortion were committed using communications by mail.

Id. ¶¶ 11-14. However, because RICO and the Hobbs Act are non-money-mandating criminal or tort statutes, the court lacks subject matter jurisdiction over plaintiff's statutory claims. See Wolf v. United States, 127 F. App'x 499, 499-501 (Fed. Cir. 2005) ("Established case law under RICO makes it clear . . . that an agency of the United States cannot commit a crime actionable under RICO. The United States, as the government, cannot be liable for criminal acts under RICO. Therefore, it cannot be liable for damages under the civil RICO provisions. Consequently, the plaintiffs' claims based on RICO must be dismissed for failure to state a claim upon which relief can be granted.") (unpublished per curiam decision) (internal quotation marks omitted); accord Addams-More v. United States, 144 F. App'x 886, 887 (Fed. Cir. 2005) (unpublished per curiam decision); Stanwyck v. United States, No. 15-28C, 2016 WL 3675400, at *4 (Fed. Cl. July 5,

2016); <u>Ealy v. United States</u>, 120 Fed. Cl. 801, 806 (2015); <u>see also</u> <u>Haka v. United States</u>, 107 Fed. Cl. 111, 114 (2012) ("The Court also cannot decide [plaintiff's] Hobbs Act claims because they either involve criminal code violations or sound in tort. This Court has no jurisdiction to decide claims involving violations of the criminal code, <u>Hufford v. United States</u>, 87 Fed. Cl. 696, 702 (2009), or claims sounding in tort, <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1343 (Fed. Cir. 2008).").

In addition to alleging statutory violations, plaintiff also claims that defendant violated his constitutional rights:

> 2.   Defendants are in violation of the Constitution in that they have illegally levied Plaintiff[']s labor, to wit: Plaintiff[']s exempt pension fund.
>
> * * *
>
> 9.   Any claim of immunity from this action is wholly without merit. Defendant Commissioner's duties and powers are prescribed by 26 USC, § 7802. The Treasurer employs all those persons engaged in enforcement of internal revenue laws and all such persons act under the direction and orders of the Treasurer (see: 26 USC, § 7803). In this case, it is clear that both the Treasurer and the Commissioner have directed and ordered their subordinates to arbitrarily despoil citizens of their labor. This is a blatant violation of the Constitution. Accordingly, Defendants have acted outside their constitutional limitations, they have lost their umbrella of immunity in this case and are ripe for suit.

Compl. ¶¶ 2, 9. Furthermore, although not specifically labeled by plaintiff as constitutional claims, plaintiff argues that "Defendants have violated Plaintiff's God-given rights of privacy," <u>id.</u> ¶ 15, and that "Defendants have violated Plaintiff's God-given rights to be secure in his house, papers and effects," <u>id.</u> ¶ 16.

Characterizing plaintiff's constitutional claims as having been made pursuant to the Fourth Amendment, the court again concludes that it lacks subject matter jurisdiction. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Because the Fourth Amendment is not a money-mandating constitutional provision, this court lacks subject matter jurisdiction over plaintiff's Fourth Amendment claim.  See Brown, 105 F.3d at 623 ("[T]he Fourth Amendment does not mandate the payment of money for its violation. . . . Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over . . . such a violation."); LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States."); accord Fry v. United States, 72 Fed. Cl. 500, 507 (2006) ("As a matter of law, the Fourth Amendment's prohibition on unreasonable search and seizure . . . [is] not money-mandating."); Haka, 107 Fed. Cl. at 113-14 ("[N]othing in the language of . . . [the] Fourth Amendment obligates the Government to pay money damages.").

## D. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim for Equitable Relief

In his prayer for relief, in addition to seeking money damages, plaintiff asks the court to "[e]njoin Defendants from any civil or criminal proceedings based upon the herein described actions of Defendants," Compl. ¶ 21, and to "[o]rder Defendants to release any and all liens and levies against Plaintiff," id. ¶ 22.  Thus, plaintiff seeks not only compensatory relief, but also equitable relief.

Generally, the Court of Federal Claims lacks the ability to award equitable relief.  See Bowen, 487 U.S. at 905 (holding that the Court of Federal Claims lacks "the general equitable powers of a district court to grant prospective relief"); Brown, 105 F.3d at 624 (holding that the Tucker Act does not provide independent relief through declaratory judgments); Stephanatos v. United States, 81 Fed. Cl. 440, 445 (2008) (explaining that the court "has no authority to grant equitable relief 'unless it is tied and subordinate to a money judgment'" (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998))).  However, the Tucker Act does authorize the court to grant equitable relief under limited circumstances:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.  In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2); see also id. §§ 1492(b)(2) (providing the court with jurisdiction to award declaratory and injunctive relief in bid protests), 1507 (providing the court with jurisdiction to issue a declaratory judgment under 26 U.S.C. § 7428).  Here, as explained above, apart from plaintiff's tax-related claims—over which the court has already concluded that it lacks subject matter jurisdiction—plaintiff fails to identify other sources of substantive law that create the right to money damages.  See infra Section III.C.  Thus, the equitable relief plaintiff seeks does

not arise as "an incident of and collateral to" a money judgment. Accordingly, the Court of Federal Claims lacks the authority to grant equitable relief in this case.

### E. Plaintiff's IFP Application Is Granted

Finally, as noted above, plaintiff filed, concurrent with his original complaint, an IFP application. Pursuant to 28 U.S.C. § 1915, courts of the United States are permitted to waive filing fees and security under certain circumstances. See 28 U.S.C. § 1915(a)(1). Plaintiffs wishing to proceed IFP must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and their belief that they are entitled to redress. Id. Here, although plaintiff listed his assets and averred his inability to pay the required court fees, he did not state the nature of his claim. That failure, however, is not fatal to his application. As long as plaintiff's complaint contains a "sufficient description" of the claim, the statutory requirements have been met. Duncan v. United States, 98 Fed. Cl. 318, 326-27 (2011); accord Jones v. United States, 100 Fed. Cl. 93, 94-95 (2011); Pleasant–Bey v. United States, 99 Fed. Cl. 363, 365-66 (2011). In this case, although the court lacks subject matter jurisdiction over the claims described in the complaint, the claims themselves were sufficiently described to warrant granting plaintiff's IFP application.

## IV. CONCLUSION

As set forth above, the court **GRANTS** plaintiff's IFP application, and **GRANTS** defendant's motion to dismiss the complaint. The clerk is directed to enter judgment accordingly and shall not award costs.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge